United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   VEOMANY MAOMANIVONG,                    No. C-13-05433 DMR

12              Plaintiff(s),               **ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'**
13        v.                                **MOTION TO DISMISS [DOCKET NO.
                                            35]**
14   NATIONAL CITY MORTGAGE CO., ET AL.,

15              Defendant(s).
     _____/
16

17        Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

18   filed by Defendants PNC Bank, N.A. (sued as "National City Mortgage Co. d/b/a PNC Mortgage, an

19   unknown business entity"[1]) and Deutsche Bank Trust Company Americas as Trustee RALI 2007-

20   QS3 ("Deutsche Bank").  The court held a hearing on August 14, 2014.  For the reasons stated

21   below and at the hearing, the motion is **granted in part and denied in part.**

22                              **I.  BACKGROUND**

23

24

25

26        _____

27        [1]   Plaintiff's allegations refer to "National City Bank" and "National City Mortgage"
     interchangeably, and Defendants appear to refer to these entities as "PNC."  Since the relationship
     between National City Bank, National City Mortgage, and PNC is not relevant for purposes of this
28   motion, the court will follow the parties' terminology, but notes that these terms all refer to Defendant
     PNC Bank.

**United States District Court**
For the Northern District of California

**A. Factual Allegations**[2]

Plaintiff Veomany Maomanivong lives in and owns a residential property in Santa Rosa, California (the "Property").  Am. Compl. [Docket No. 27] at ¶ 1.  On November 13, 2006, Plaintiff took out a mortgage loan from National City Mortgage secured by the Deed of Trust on the Property, in the amount of $555,560.  *Id.* at ¶ 10, Ex. A.

**1. Sequence of Beneficiaries and Trustees**

The Deed of Trust named "National City Mortgage a division of National City Bank" as the lender and beneficiary and "National City Bank" as the Trustee.  *Id.* at Ex A at 1-2.

On April 9, 2007, "National City Mortgage, a division of National City Bank" executed an Assignment of Deed of Trust, granting, assigning, and transferring all beneficiary interest in the Deed of Trust to "National City Mortgage Co., a subsidiary of National City Bank."  *Id.* at ¶ 14, Ex. B.

On July 12, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for the lender ("National City Bank for National City Mortgage, a Division of National City Bank"), executed an Assignment of Deed of Trust that granted, assigned, and transferred all beneficiary interest in the Deed of Trust to Deutsche Bank.  *Id.* at ¶ 16, Ex. C.

On January 24, 2012, Cal-Western Reconveyance Corporation ("Cal-Western Corporation")[3] executed and recorded a Notice of Default on the Property.  *Id.* at ¶ 22, Ex. D (Notice of Default recorded January 24, 2012).  The Notice of Default states that Cal-Western Corporation is "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under [the] deed of trust."  *Id.* at Ex. D.  Plaintiff alleges that prior to January 24, 2012, no Substitution of Trustee was recorded substituting Cal-Western Corporation as the trustee of the Deed of Trust.  *Id.* at ¶ 23.

---

[2]  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[3]  As discussed further below, Plaintiff differentiates between Cal-Western Corporation and Defendant Cal-Western Reconveyance LLC ("Cal-Western LLC").  Cal-Western Corporation is not a party to this lawsuit.

United States District Court
For the Northern District of California

On April 6, 2012, Deutsche Bank executed a Substitution of Trustee substituting Cal-Western Corporation in as trustee of the Deed of Trust on the Property.  *Id.* at ¶ 31, Ex. F.

On September 26, 2013, Cal-Western LLC executed a Notice of Trustee's Sale on the Property, setting a trustee's sale date for October 13, 2013.  *Id.* at ¶ 42, Ex. H.  The Notice of Trustee's Sale was recorded on October 1, 2013.  *Id.*

Plaintiff alleges that PNC Bank remains the servicer of the subject loan.  Am. Compl. at ¶ 103.

**2.  Plaintiff's Default and Loan Modification Applications**

In July 2011, Plaintiff began experiencing financial difficulty.  *Id.* at ¶ 15.  Around August 2011, Plaintiff contacted National City Bank to request financial assistance, but was told by a loan agent that National City Bank's policy was to refrain from providing borrowers loan options unless the borrower was at least three months behind on her monthly payments and was therefore considered "delinquent."  *Id.* at ¶ 17.

In October 2011, Plaintiff defaulted on her loan.  *Id.* at ¶ 19.  She again contacted National City Mortgage, who told Plaintiff that she could not be considered for loan assistance because her loan was not yet "delinquent."  *Id.* at ¶ 20.

Between October 2011 and February 2012, Plaintiff pooled her extra funds, liquidated assets, and obtained financial commitments from family and friends in order to acquire the money necessary to pay her outstanding arrears and bring her loan current.  *Id.* at ¶ 21.

On January 24, 2012, as stated above, Cal-Western Corporation executed a Notice of Default on the Property.  *Id.* at ¶ 22, Ex. D.

In February 2012, Plaintiff contacted National City Mortgage to obtain an accounting of her arrears so that she would know what she needed to pay in order to bring her loan current.  *Id.* at ¶ 24.  She informed the loan agent (Ms. Williams) that she wanted to reinstate her loan and bring it current by tendering complete payment of her arrears.  *Id.* at ¶ 24.  However, Ms. Williams "urged Ms. Maomanivong to refrain from reinstating her loan and, instead, apply for a loan modification through Defendants, assuring Ms. Maomanivong that she qualified for a loan modification."  *Id.*  Ms. Williams told Plaintiff that modification was "her best option," because it would bring her loan

3

United States District Court

For the Northern District of California

current without requiring Plaintiff to pay a large lump-sum payment to reinstate the loan. *Id.* Ms. Williams explained that making such a reinstatement payment would require Plaintiff to continue making payments under the original interest rate of the loan. *Id.*

Later in February 2012, Plaintiff received a loan modification application from Defendants, which she opened immediately, completed, and submitted to Defendants for review, attaching all of the requested documentation. *Id.* at ¶ 25.

On April 2, 2012, Plaintiff contacted National City Mortgage to follow up on her loan modification application, and spoke to a "Loss Mitigation Specialist" named Ernie, who informed Plaintiff that "Defendants were currently reviewing her application and would likely make a decision within four to six weeks." *Id.* Ernie instructed Plaintiff to submit supplemental financial documentation within two weeks. *Id.* Plaintiff submitted the required documents that day. *Id.* at ¶ 26.

On April 6, 2012, Plaintiff received a letter from National City Mortgage dated April 4, 2012 informing Plaintiff that her loan modification application was incomplete, and requesting additional financial documents. *Id.* at ¶¶ 28-29, Ex. E. On the same day, Plaintiff submitted the requested documents in the manner requested by Defendants. *Id.* at ¶ 29. Plaintiff also contacted National City Mortgage again, and spoke with a Loss Mitigation Specialist named Rachael about the letter dated April 4, 2012. *Id.* at ¶ 30. Rachael informed Plaintiff that her application required additional documentation, and instructed Plaintiff to submit a supplemental loan modification application. Rachael also told Plaintiff that Rachael would send Plaintiff a supplemental loan modification application form. *Id.* at ¶ 30.

In late April 2012, Plaintiff received a loan modification package from National City Mortgage. She immediately completed the application and submitted it with the required documentation. *Id.* at ¶ 32. In May 2012, Plaintiff contacted National City Mortgage to inquire about the status of her application, and spoke with Ryan, a loan specialist who told Plaintiff that the application had been received and that PNC Bank would contact Plaintiff within six to eight weeks if it required additional financial information. *Id.* at ¶ 33. Ryan reassured Plaintiff that she was "pre-approved" for loan modification, and that she should "handle her finances accordingly." *Id.*

United States District Court

For the Northern District of California

In September 2012, Plaintiff contacted National City Mortgage again about the status of her application.  This time Plaintiff spoke with a loan specialist named Alex, who informed Plaintiff that Defendants currently were reviewing her application and expected to render a decision within six to eight weeks.  *Id.* at ¶ 34.  Alex then instructed Plaintiff to provide updated documentation to supplement her supplemental application.  *Id.*  Immediately after the conversation, Plaintiff submitted the requested documents.  *Id.* at ¶ 35.

On October 15, 2012, National City Mortgage sent Plaintiff a letter stating, "The review of your hardship request assistance has been completed.  Unfortunately, as of 10-15-12, we are unable to approve or finalize your request for assistance due to the following reason(s): We did not receive the completed Borrower Package as requested.  If you would like to continue the review process, please forward the requested information immediately."  *Id.* at ¶ 36, Ex. G.  Upon receiving this letter, Plaintiff immediately contacted "Defendants" and spoke with a loan agent.  *Id.* at ¶ 37.  The loan agent initially told Plaintiff that the October 15 letter requested supplemental documentation, but then informed Plaintiff, based on his review of her file, that Plaintiff had in fact submitted the required documents and the October 15 letter had been sent by mistake.  *Id.*  Nonetheless, the loan agent instructed Plaintiff to submit a supplemental loan modification application, and told Plaintiff that she would receive an application package within six to eight weeks.  *Id.*  Plaintiff received the package in March 2013 and immediately completed and submitted it.  *Id.* at ¶ 38.

In July 2013, Plaintiff again contacted Defendants and again spoke with a loan agent who instructed her to submit supplemental financial documents, which Plaintiff did immediately.  *Id.* at ¶ 39.

In August 2013, Plaintiff contacted Defendants and spoke with a loan agent, who told Plaintiff that her application was still under review.  Plaintiff asked why the application process was taking so long, and informed the loan agent that she was ready and willing to pursue other loan options, including reinstating her loan by either tendering payment of her arrears or filing for

5

Chapter 13 bankruptcy protection.[4]  *Id.* at ¶ 40.  The loan agent informed Plaintiff that she should wait until Defendants completed their review of Plaintiff's loan application before pursuing other loan assistance options, and told Plaintiff that a loan modification was Plaintiff's "best option" going forward.  *Id.* at ¶ 40.  In addition, the loan agent promised Plaintiff that Defendants would not proceed with any foreclosure activities until they made a final determination on her loan modification application, and in the event that Plaintiff's application was denied, she would have ample time to pursue other, "more costly" foreclosure prevention alternatives.  Based on this promise, Plaintiff refrained from reinstating her loan either by tendering payment of her arrears or filing for Chapter 13 bankruptcy protection.  *Id.* at ¶ 41.

On October 1, 2013, Cal-Western LLC recorded a Notice of Trustee's Sale on the Property, setting a trustee's sale date for October 13, 2013.  *Id.* at ¶ 42, Ex. H.  On October 2, 2013, Plaintiff received this Notice of Trustee's Sale on her front porch.  Plaintiff contacted National City Mortgage immediately, and spoke with a Loan Mitigation Specialist named Donald, who informed Plaintiff that the notice was merely posted as a matter of company policy, but promised that Defendants would not proceed with any trustee's sale unless they first made a final decision on her pending loan modification application, and in the event that her application was denied, she would have at least thirty days to dispute Defendants' determination and/or pursue other non-foreclosure options.  *Id.* at ¶ 43.

On October 22, 2013, Plaintiff's counsel obtained a temporary restraining order to prevent Defendants from executing the trustee's sale.  *Id.* at ¶ 44, Ex. I.

**B.  Causes of Action**

Plaintiff brings seven causes of action against all Defendants: (1) violation of California Civil Code § 2924(a)(6); (2) violation of California Civil Code § 2934a(e); (3) violation of California Civil Code § 2923.6; (4) violation of California Civil Code § 2923.5; (5) promissory

---

[4] Chapter 13 bankruptcy "allows a homeowner in default to reinstate the original loan payments, pay the arrearages over time, avoid foreclosure, and retain the home."  *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 223 (2011).

estoppel; (6) negligence and negligence per se; and (7) violation of the California Unfair Competition Law ("UCL"), codified at California Business and Professions Code § 17200, et seq.

PNC Bank and Deutsche Bank move to dismiss all seven claims against them.

## II. LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires." However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

## III. DISCUSSION

### A. California Civil Code § 2924(a)(6)

Plaintiff's first cause of action, brought against all Defendants, is for a violation of California Civil Code § 2924(a)(6). Section 2924(a)(6) prevents an entity from "record[ing] or caus[ing] a notice of default to be recorded or otherwise initiat[ing] the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial

interest."  Plaintiff alleges that Cal-Western Corporation did not have the authority to initiate the foreclosure process by executing and recording a Notice of Default on January 24, 2012 because, as of that date, National City Bank was the original trustee named under the Deed of Trust and no substitution of trustee had been recorded.  Am. Compl. at ¶¶ 53-58.  Plaintiff also alleges that the Notice of Trustee's Sale executed by Cal-Western LLC on September 26, 2013 and recorded on October 1, 2013 is void because the April 6, 2012 Substitution of Trustee names as substitute trustee Cal-Western *Corporation*, not Cal-Western LLC.  Plaintiff seeks injunctive relief prohibiting Defendants from foreclosing on the Property because both the Notice of Default and Notice of Trustee's Sale are allegedly invalid.  *Id.* at ¶ 64.

Defendants argue that the claim under Section 2924(a)(6) should be dismissed because that section does not create a private right of action.  "It is true that there is no specific right of action provision, analogous to Section 2924.12,[5] that provides for civil enforcement of the specific requirements of Sections 2924 *et seq.*"  *Vasquez v. Bank of Am. , N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924 at *9 (N.D. Cal. Nov. 12, 2013) (holding that Section 2924(a)(6) does not support a private right of action).  Furthermore, California courts have held that Section 2924(a) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized."  *Gomes v. Countrywide Home Loans, Inc.,* 192 Cal.App. 4th 1149, 1155 (2011), *review denied* (May 18, 2011), *cert. denied,* 132 S.Ct. 419 (2011).  However, some courts in this district have declined to read *Gomes* to preclude all private right of actions challenging whether the defendants were authorized to foreclose.  *See, e.g., Rubio v. U.S. Bank N.A.*, No. C 13-05752 LB, 2014 WL 1318631 at *6 (N.D. Cal. Apr. 1, 2014) (*Gomes* did not preclude private right of action

---

[5] California Civil Code § 2924.12 explicitly creates private right of actions for injunctive relief and/or damages for violations of specified foreclosure provisions.  *See, e.g.*, Cal. Civ. Code § 2924.12(a)(1)("If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."); § 2924.12(b) ("After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale.").

United States District Court<br>For the Northern District of California

1  where the plaintiff "identified a specific factual basis for alleging that the foreclosure was not

2  initiated by the correct party").

3      The court need not resolve the issue of whether Section 2924(a)(6) creates a private right of

4  action because even assuming *arguendo* that the statute does, Plaintiff has failed to state a claim.

5      With respect to Plaintiff's claim that Cal-Western Corporation did not have authority to

6  execute the Notice of Default, Section 2924(a)(6) permits a substituted trustee to initiate foreclosure,

7  and Plaintiff's allegations and documents attached to the Amended Complaint demonstrate that a

8  Substitution of Trustee which substituted Cal-Western Corporation as the trustee was recorded on

9  April 6, 2012.  *See* Am. Compl. at ¶ 31 ("On or about April 6, 2012, Defendant Deutsche Bank . . .

10  executed a Substitution of Trustee substituting Cal-Western Reconveyance Corporation in as trustee

11  of the Deed of Trust on Ms. Maomanivong's home."); Ex. F.  The fact that Substitution of Trustee

12  was executed on April 6, 2012, *after* Cal-Western Corporation had recorded the January 24, 2012

13  Notice of Default, is of no consequence.  California law expressly permits a substitution of trustee to

14  be effected after a notice of default, as long as it is recorded before the notice of sale is recorded, and

15  the beneficiary mails a copy of the substitution prior to the recording of the substitution.  *See* Cal.

16  Civ. Code § 2934a(c) ("If the substitution is effected after a notice of default has been recorded but

17  prior to the recording of the notice of sale, the beneficiary or beneficiaries shall cause a copy of the

18  substitution to be mailed . . . to the trustee then of record and to all persons to whom a copy of the

19  notice of default would be required to be mailed . . . .").  *See also Makreas v. First Nat. Bank of N.*

20  *California*, No. 11-CV-02234-JST, 2013 WL 2436589 at *6 (N.D. Cal. June 4, 2013) (substituted

21  trustee was lawful trustee at the time the notice of default was recorded, even though substitution

22  was recorded one month after notice of default); *Elliott v. Mortgage Elec. Registration Sys., Inc.*,

23  No. 12-CV-4370 YGR, 2013 WL 1820904 at *2 (N.D. Cal. Apr. 30, 2013) ("The allegation that the

24  substitution of trustee had not been recorded at the time of the notice of default is of no effect, since

25  there is not a requirement that it be recorded prior to that time."); *West v. JPMorgan Chase Bank,*

26  *N.A.*, 214 Cal. App. 4th 780, 801 (2013) (rejecting plaintiff's contention that foreclosure sale was

27  void because substituted trustee did not have authority to act, where substitution of trustee was

28  recorded six weeks after notice of default).  As such, Cal-Western Corporation had authority to

United States District Court

For the Northern District of California

1   record the January 24, 2012 Notice of Default.

2          With respect to Plaintiff's argument that Cal-Western LLC did not have authority to execute

3   the Notice of Trustee's Sale, pursuant to Section 2924(a)(6), the analysis is slightly different.  This

4   argument fails not because Cal-Western LLC was eventually substituted as trustee—indeed, there is

5   no evidence in the record indicating that a notice of substitution of trustee was ever recorded for

6   Cal-Western LLC—but because Plaintiff alleges that Cal-Western LLC acted as the *agent* of

7   Defendants.  The foreclosure process may be initiated by "the holder of the beneficial interest under

8   the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or

9   the designated ***agent***[6] of the holder of the beneficial interest."  Cal. Civ. Code § 2924(a)(6)

10  (emphasis added).  Here, Plaintiff alleges that "at all times material to this Complaint, each of the

11  Defendants . . . in addition to acting for [itself] . . . are and were acting as the agent, servant,

12  employee and representative of . . . each and all of the Defendants and within the course, scope and

13  authority of that agency . . . ."  Am. Compl. at ¶ 6.  Through this allegation, Plaintiff insulates

14  himself from Defendants' argument that this claim should be dismissed as to PNC Bank and

15  Deutsche Bank because they are not responsible for actions taken by Cal-Western LLC.  *See* Opp.

16  [Docket No. 36] at 11-12 ("Defendant PNC was the servicer of the loan, Cal-Western Corp. and Cal-

17  Western LLC were the trustees of the loan, but they all worked as agents for Defendant Deutsch[e]

18  Bank . . . . Thus under common agency principals, they are all liable for the acts of the other, as

19  there was an agency relationship among all the Defendants named in this action.").  Plaintiff cannot

20  have it both ways: his allegation that the Defendants were agents of one another, which creates a

21  theory of liability for PNC Bank and Deutsche Bank for the actions of other entities, contradicts his

22  argument that Cal-Western LLC did not have authority to record the Notice of Trustee's Sale.  *See*

23  *Atienza v. Wells Fargo Bank, N.A.*, No. 10-03457 RS, 2011 WL 11507 at *3 (N.D. Cal. Jan. 4, 2011)

24  ("[I]n another seeming contradiction, plaintiffs aver that RTSC acted 'at all times' as an agent for

25  ───────────────────

26          [6] Section 2924 does not define what constitutes a "designated" agent, but elsewhere in the
    foreclosure statute a "person authorized to record the notice of default or the notice of sale" is defined
27  to include "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person
    designated in an executed substitution of trustee, or an agent of that substituted trustee."  Cal. Civ. Code
28  § 2924b(b).

10

United States District Court

For the Northern District of California

1    Wells Fargo.  A [notice of default] may be issued, however, not just by the trustee, but also by the

2    mortgagee, beneficiary, or any of their authorized agents.  *See* § 2924(a)(1). Thus plaintiffs'

3    conclusion that RTSC was unauthorized to issue the [notice of default] is undermined by their own

4    assertion of an agency relationship.").  Plaintiff's allegations show that Cal-Western LLC, as the

5    alleged agent of Deutsche Bank, had authority to record the Notice of Trustee's Sale.

6           Plaintiff's Section 2924(a)(6) claim is therefore **dismissed with leave to amend.**  Plaintiff

7    may amend this claim only if he can plausibly allege another theory for a violation of Section

8    2924(a)(6).

9    **B. California Civil Code § 2934a(e)**

10          Under the statute governing substitution of trustees, "unless a new notice of sale containing

11   the name, street address, and telephone number of the substituted trustee is given pursuant to Section

12   2924f after execution of the substitution, any sale conducted by the substituted trustee shall be

13   void." Cal. Civ. Code § 2934a(e).  Plaintiff's theory for violation of this statute is unclear.  The

14   Amended Complaint alleges only that Cal-Western LLC "lacks the authority to conduct, let alone

15   give notice of a trustee's sale." Am. Compl. at ¶ 74.  Thus, as alleged, this claim simply reiterates

16   Plaintiff's Section 2924(a)(6) claim, which is dismissed for the reasons stated above, and does not

17   connect Defendants' conduct with Section 2934a(e), which addresses the information that must be

18   included in a notice of sale recorded by a substitute trustee.  Plaintiff's opposition to the motion to

19   dismiss sheds no further light on the nature of her claim.  Plaintiff's allegations are therefore too

20   vague to state a cognizable legal theory for the violation of Section 2934a(e).

21          At the hearing, Plaintiff's counsel clarified her theory for this claim: Cal-Western

22   Corporation, not LLC, was the substitute trustee, so the Notice of Trustee's Sale bearing Cal-

23   Western LLC's contact information does not meet the requirements of Section 2934a(e).  The first

24   problem with this argument is that Plaintiff raised it at oral argument rather than in the pleadings.  A

25   more fundamental problem with this argument is that Section 2934a(e), by its own terms, has the

26   effect of invalidating a foreclosure sale conducted by a substituted trustee if the notice of sale does

27   not contain the required information.  Cal. Civ. Code § 2934a(e) ("[U]nless a new notice of sale

28   containing the name, street address, and telephone number of the substituted trustee is given

United States District Court

For the Northern District of California

1    pursuant to Section 2924f after execution of the substitution, any sale conducted by the substituted

2    trustee shall be void.").  Here, Plaintiff has not alleged that a foreclosure sale has occurred, so there

3    is nothing to invalidate.  The court has not located any case in which a court held that Section

4    2934a(e) creates a private right of action to prevent a foreclosure sale that has not yet occurred, and

5    Plaintiff's case citations do not stand for that proposition.[7]

6         For the above reasons, and because amendment cannot cure the defect described above,

7    Plaintiff's claim for violation of Section 2934a(e) is **dismissed.** Should a foreclosure sale occur,

8    Plaintiff shall file a motion for leave to amend if she wishes to add a claim based on Section

9    2934a(e).

10   **C.  California Civil Code § 2923.6**

11        Under California Civil Code § 2923.6(c), "[i]f a borrower submits a complete application for

12   a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage

13   servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or

14   notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application

15   is pending."  Specifically, "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized

16   agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the

17   following occurs: (1) [t]he mortgage servicer makes a written determination that the borrower is not

18   eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has

19   expired; (2) [t]he borrower does not accept an offered first lien loan modification within 14 days of

20   the offer; or (3) [t]he borrower accepts a written first lien loan modification, but defaults on, or

21   otherwise breaches the borrower's obligations under, the first lien loan modification."  *Id.*  "If the

22   borrower's application for a first lien loan modification is denied, the borrower shall have at least 30

23   days from the date of the written denial to appeal the denial and to provide evidence that the

24

25        [7] *See West*, *supra* Section III.A, 214 Cal. App. 4th at 801 (plaintiff did not allege cause of action
     under Section 2934a; trustee's sale had already occurred); *Kramer v. Bank of Am., N.A.*, No. 13-CV-
26   01499-AWI, 2014 WL 1577671 at *8 (E.D. Cal. Apr. 17, 2014) (plaintiff did not allege cause of action
     under Section 2934a; court briefly mentioned Section 2934a in analysis of plaintiff's claim for
27   cancellation of foreclosure sale under Cal. Civ. Code § 3412 before denying that claim); *Rieber v.
     OneWest Bank FSB*, No. 13-CV-2523-W JLB, 2014 WL 1796706 (S.D. Cal. May 6, 2014) (plaintiff did
28   not allege, and court did not consider, cause of action under Section 2934a(e)).

mortgage servicer's determination was in error."  Cal. Civ. Code § 2923.6(d).

Plaintiff alleges that she submitted a complete loan modification application around February or March 2013.  Am. Compl. at ¶ 38 (Plaintiff submitted complete application in March 2013); ¶ 82 (Plaintiff submitted complete application in February 2013).  Plaintiff also alleges that, to date, Defendants have not made a determination on Plaintiff's application, such that the recording of the Notice of Trustee's Sale on October 1, 2013 violated Section 2923.6(c).  *See id.* at ¶ 87.  Plaintiff requests that the court enjoin Defendants from continuing to violate Section 2923.6.

Defendants raise two arguments for dismissal of this claim.  First, Defendants argue that there is no allegation that a trustee's sale has occurred.  However, an action to enjoin a violation of Section 2923.6 does not require the allegation that a trustee's sale has occurred.  California Civil Code § 2924.12 creates different private rights of action for violations of Section 2923.6 depending on whether or not a trustee's sale has occurred.  If a trustee's deed upon sale has been recorded, "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages" for a violation of Section 2923.6.  Cal. Civ. Code § 2924.12(b). "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section . . . 2923.6 . . . ."  Cal. Civ. Code § 2924.12(a)(1).  "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief."  Cal. Civ. Code § 2924.12(a)(2).  Here, Plaintiff seeks injunctive relief, which is authorized by Section 2924.12(a)(1)-(2).

Second, Defendants argue that PNC Bank and Deutsche Bank should be dismissed because "there is no plausible allegation showing that PNC or Deutsche Bank violated this provision.  The notices of default and sale . . . [were] done by Cal-Western, not PNC or Deutsche Bank."  Motion at 8.  However, the statute creating a private right of action under Section 2923.6 recognizes that responsibility for the decision to record a foreclosure-related notice may lie with multiple parties, as it contemplates that injunctive relief may require action from not only the trustee who records the foreclosure-related notices but also the beneficiary of the Deed of Trust or the mortgage servicer.

United States District Court

For the Northern District of California

1  *See* Cal. Civ. Code § 2924.12(a)(2) ("Any injunction shall remain in place and any trustee's sale

2  shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee,

3  beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to

4  the action for injunctive relief."). *See also Bingham v. Ocwen Loan Servicing, LLC*, No. 13-CV-

5  04040-LHK, 2014 WL 1494005 at *5 (N.D. Cal. Apr. 16, 2014) (denying motion to dismiss Section

6  2923.6(c) claim against lender, mortgage servicer, and trustee); *Vasquez v. Bank of Am. , N.A.*, No.

7  13-CV-02902-JST, 2013 WL 6001924 at *9 (N.D. Cal. Nov. 12, 2013) (denying motion to dismiss

8  Section 2923.6(c) claim against lender and mortgage servicer); *Banuelos v. Nationstar Mortgage,*

9  *LLC*, No. 13-CV-05308 HRL, 2014 WL 1246843 at *3 (N.D. Cal. Mar. 25, 2014) (rejecting

10  trustee's argument it only played a limited role in foreclosure process and cannot be held liable

11  under Section 2923.6(c) because that statute "on its face, includes trustees").

12      Here, Deutsche Bank is the beneficiary on the Deed of Trust, and PNC Bank acted as the

13  mortgage servicer.[8] Plaintiff contends that PNC Bank and Cal-Western LLC, as Deutsche Bank's

14  mortgage servicer and trustee, respectively, acted as agents of Deutsche Bank. Opp. at 12; Am.

15  Compl. at ¶ 6 (each Defendant was acting as the agent of the others). As such, Plaintiff's allegations

16  implicate both PNC Bank and Deustche Bank in the violation of Section 2923.6: PNC Bank for

17  failing to make a determination on Plaintiff's loan modification application, and Deustche Bank for

18  authorizing Cal-Western LLC's recording of the Notice of Trustee's Sale despite Plaintiff's pending

19  application.

20      Accordingly, the court finds that Plaintiff has sufficiently pleaded a violation of Section

21  2923.6, and the motion to dismiss this claim is **denied.**

22  **D.  California Civil Code § 2923.5**

23

24  _____

25      [8]  The Amended Complaint specifically alleges that PNC Bank acted as the mortgage servicer,

26  *see* Am. Compl. at ¶ 103 ("Defendant National City Mortgage is the servicer of the subject loan."), and
Plaintiff's allegations of PNC Bank/National City Mortgage's conduct in the relevant time period
describe the acts of a mortgage servicer. *See* Cal. Civ. Code § 2920.5 ("'Mortgage servicer' means a

27  person or entity who directly services a loan, or who is responsible for interacting with the borrower,
managing the loan account on a daily basis including collecting and crediting periodic loan payments,

28  managing any escrow account, or enforcing the note and security instrument, either as the current owner
of the promissory note or as the current owner's authorized agent.").

**United States District Court**
For the Northern District of California

Plaintiff's fourth claim alleges that Defendants violated California Civil Code § 2923.5 by initiating a foreclosure proceeding without fulfilling the statutory prerequisites.  Section 2923.5 obligates a "mortgagee, beneficiary, or authorized agent" to contact a borrower by phone or in person at least 30 days before filing a notice of default in order to "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2). "The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of default."  *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225 (2010).  The words "assess" and "explore" "must be narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing."  *Id.* at 232. "Exploration must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds "in lieu," workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place."  *Id.*  "[T]he lender itself does not have any duty to become a loan counselor itself."  *Id.*  The statute also requires a notice of default to include "a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower" or "has tried with due diligence to contact the borrower as required by this section."  Cal. Civ. Code § 2923.5(b).

Plaintiff alleges that Defendants violated Section 2923.5 in four ways.  First, they failed to contact her, in person or by telephone, at least 30 days prior to recording the January 24, 2012 Notice of Default.[9]  Second, to the extent that Defendants did contact her, they failed to explore *all*

---

[9] The court notes that Plaintiff alleges that *she* initiated contact with Defendants to discuss foreclosure alternatives, which may suffice to meet the requirements of Section 2923.5.  It is not required that *Defendants* be the party initiating the phone contact.  *Burton v. Ndex W., LLC*, B232119, 2012 WL 1267884 at * 4 (Cal. Ct. App. Apr. 16, 2012) ("The purpose of the contact requirement is fully satisfied if the contact occurs regardless of who initiated the contact. If the borrower initiates a call in which the parties discuss the borrower's financial condition and explore options for the borrower to avoid foreclosure, we can see no good reason to construe section 2923.5, subdivision (a)(2) as requiring the mortgagee, beneficiary or authorized agent to initiate another call for the same purpose.").  However, Section 2923.5 also requires that the mortgage servicer (1) advise the borrower that he or she has the right to request a subsequent meeting and (2) provide a toll-free number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency.  Cal. Civ. Code § 2923.5(a)(2).  The contact that Plaintiff alleges she initiated did not include all of the information that the statute requires Defendants to have transmitted.

United States District Court

For the Northern District of California

foreclosure alternatives, and instead discussed only the option of loan modification.[10]  Third, they failed to attach a declaration to the Notice of Default or include a statement of compliance within it. Fourth, Defendants failed to try with due diligence to contact her, including by failing to (1) send a first class letter with a toll-free number to find a HUD-certified housing counseling agency, (2) make efforts to contact Plaintiff at least three times on different hours and on different days at her primary number on file, (3) send a certified letter with return receipt requested, (4) provide a toll-free phone number for contact purposes that would be answered by a live person during business hours, and (5) have a prominent link on its website setting forth specified information for borrowers who wish to discuss options before foreclosure, including contact information for the lender and for HUD.   Am. Compl. at ¶¶ 96-99.  Plaintiff seeks injunctive relief to enjoin the foreclosure process until Defendants comply with these requirements.  *See Mabry*, 185 Cal. App. 4th at 235 ("The only remedy provided [for a violation of Section 2923.5] is a postponement of the sale before it happens.") (emphasis in original).

Defendants raise two arguments for dismissal.  First, they contend that even taking Plaintiff's allegations as true, Defendant did not violate Section 2923.5 because they sufficiently explored foreclosure alternatives with Plaintiff.  However, this assertion is conclusory, as Defendants do not offer any analysis of Plaintiff's actual allegations.  Plaintiff alleges that, prior to the January 24, 2012 Notice of Default, she contacted PNC Bank three times, in July, August, and October 2011. Each time, she was told that she would not be considered for loan assistance because she was not yet delinquent on her loan.  Taking these allegations as true, Defendants failed to communicate with Plaintiff about *any* foreclosure alternatives prior to the recording of the Notice of Default.  At the very least, a question of fact exists as to the content of the communications between Plaintiff and Defendants prior to the Notice of Default.  *See Skov v. U.S. Bank Nat. Assn.*, 207 Cal. App. 4th 690, 696 (2012) (reversing the trial court's dismissal of Section 2923.5 claim because whether defendant complied was a question of fact, where plaintiff alleged that she was fully available to meet with the

---

[10] Plaintiff alleges that Defendants should have discussed five foreclosure alternatives: (1) loan modification, (2) Chapter 13 bankruptcy, (3) reinstatement, (4) deed in lieu of foreclosure, and (5) short sale.  Am. Compl. at ¶ 98.

1    lender to explore foreclosure options; had hired attorneys or other representatives, who telephoned

2    and sent letters to the lender which were unanswered; the lender failed and refused to evaluate her

3    finances, to advise her of her right to meet with the lender to discuss foreclosure avoidance options,

4    and to give her a HUD telephone number; and the lender did not contact her until after it had

5    recorded the notice of default).

6        Second, Defendants argue that PNC Bank and Deutsche Bank cannot be liable for a violation

7    of Section 2923.5 because it was Cal-Western Corporation that recorded the Notice of Default.

8    However, this argument misreads the statute.  Nothing in Section 2923.5 restricts liability to the

9    trustee who records the Notice of Default.  Instead, the statute imposes a requirement on the

10    "mortgagee, beneficiary, or authorized agent" to contact the borrower.  Deutsche Bank is the

11    beneficiary and lender, and Plaintiff has alleged that PNC Bank and Cal-Western LLC are Deutsche

12    Bank's agents.  These allegations suffice to state claims against Deutsche Bank and PNC Bank.  *See*

13    *also Mabry*, 185 Cal. App. 4th at 214 (Section 2923.5 requires "a lender" to contact the borrower;

14    treating the lender as "synonymous with" the mortgage servicer assigned to service the loan).

15        Because neither of Defendants' arguments persuade the court that Plaintiff has failed to state

16    a claim for violation of Section 2923.5, the motion to dismiss this claim is **denied.**

17    **E.  Promissory Estoppel**

18        Plaintiff alleges that on two separate occasions, in August and October 2013, Defendants'

19    loan agents clearly and unambiguously promised Plaintiff that Defendants would not foreclose on

20    Plaintiff's home, and Plaintiff relied on these promises and refrained from pursuing her other non-

21    foreclosure options that would have prevented the foreclosure process and brought her loan current.

22    Am. Compl. at ¶ 106.

23        Specifically, Plaintiff alleges that in August 2013, she contacted Defendants and spoke with

24    a loan agent about her pending loan modification application.  Plaintiff informed the loan agent that

25    she was ready and willing to pursue other loan options, including reinstating her loan by either

26    tendering payment of her arrears or filing for Chapter 13 bankruptcy protection, but the loan agent

27    advised Plaintiff to wait until Defendants completed their review of Plaintiff's loan application

28    before pursuing other loan assistance options.  The loan agent promised Plaintiff that Defendants

**United States District Court**
For the Northern District of California

1   would not proceed with any foreclosure activities until they made a final determination on her loan

2   modification application, and in the event that Plaintiff's application was denied, she would have

3   ample time to pursue other, "more costly" foreclosure prevention alternatives.  Based on this

4   promise, Plaintiff refrained from tendering payment of her arrears or filing for Chapter 13

5   bankruptcy protection.  Plaintiff also alleges that on October 2, 2013, Plaintiff received the Notice of

6   Trustee's Sale and contacted National City Mortgage immediately, and spoke a loan agent who

7   informed Plaintiff that the notice was merely posted as a matter of company policy, but promised

8   that Defendants would not proceed with any trustee's sale unless they first made a final decision on

9   her pending loan modification application.

10         Plaintiff brings a claim of promissory estoppel against all Defendants to enforce Defendants'

11   promises.  "Promissory estoppel applies whenever a promise which the promissor should reasonably

12   expect to induce action or forbearance on the part of the promisee or a third person and which does

13   induce such action or forbearance would result in an injustice if the promise were not enforced."

14   *Aceves*, *supra* n. 4, 192 Cal. App. 4th at 227.  "The elements of a promissory estoppel claim are (1) a

15   promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made;

16   (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel

17   must be injured by his reliance."  *Id.* at 225.  A promise must "be clear and unambiguous," i.e.,

18   "definite enough that a court can determine the scope of the duty, and the limits of performance must

19   be sufficiently defined to provide a rational basis for the assessment of damages."  *Id.* at 226.

20         Defendants offer several arguments for dismissal of this claim.  First, Defendants contend

21   that there are no allegations against Deutsche Bank.  However, Plaintiff contends that PNC

22   Bank/National City Mortgage acted as Deutsche Bank's agent, such that Deutsche Bank is liable for

23   PNC Bank's promises.  Defendants appear to have conceded this point, as it offers no response on

24   reply.  *See Williams v. Cnty. of Alameda*, No. C 12-02511 SBA, -- F.Supp.2d --, 2014 WL 556008 at

25   * 12 (N.D. Cal. Feb. 10, 2014) ("This Court only considers arguments that are specifically and

26   distinctively raised by the parties in their briefs.") (citing *Indep. Towers of Wash. v. Washington*,

27   350 F.3d 925, 929 (9th Cir. 2003)).

28

United States District Court

For the Northern District of California

Defendants next argue that Ms. Williams' statements in February 2012 are too indefinite to meet the first element of this claim. But Defendants' focus on Ms. Williams' is misplaced, as Plaintiff does not argue that her February 2012 statements form the basis of her promissory estoppel claim, but rather the statements of loan agents in August and October 2013. Defendants do not contend that these later statements are unclear or ambiguous.

Defendants also argue that Plaintiff cannot have been injured by her reliance on the August 2013 and October 2013 promises because the foreclosure sale has not yet occurred. This misapprehends Plaintiff's theory for promissory estoppel, which is that the detriment suffered by Plaintiff was not the loss of her home in a foreclosure sale, but her forbearance of two options to avoid foreclosure that would have been available to Plaintiff had she not relied on those promises. A mortgagor's decision to forbear a foreclosure alternative, such as filing for Chapter 13 bankruptcy, can constitute the detriment or injury required for a promissory estoppel claim. *See Aceves*, 192 Cal. App. 4th at 233 (appellate court reversed the trial court's dismissal of plaintiff's promissory estoppel claim where plaintiff defaulted on home loan and subsequently filed for Chapter 7 bankruptcy, and decided not to convert Chapter 7 proceeding into Chapter 13 proceeding because lender promised to work with her on a loan reinstatement and modification if she would forego further bankruptcy proceedings, but lender did not act as promised and instead completed foreclosure on the plaintiff's home).

However, Defendants contend that Plaintiff has not suffered injury as a result of her reliance on the August 2013 statement because she remains free to this day to tender payment of the arrearages or to file for Chapter 13 bankruptcy. In response, Plaintiff explains that the injury she suffered was forbearance of foreclosure alternatives available to her only for a narrow period of time: whereas in August 2013 she was ready and able to pay her arrearages or file for Chapter 13 bankruptcy because she "had access to corporate and familial lines of credit," she is no longer able to exercise either option because "over the course of the last two and a half years, Defendants have substantially delayed and prevented [Plaintiff] from reinstating her loan for approximately two and a half years. As a result, over the course of the last two and a half years, Defendants have unlawfully added tens of thousands of dollars to her arrears in their own attorneys' fees, late fees, penalties, and

charges" such that Plaintiff longer has access to the amount of money required to reinstate her loan or to make reduced Chapter 13 delinquency payments.  Opp. at 17.

The first problem with Plaintiff's response is that it raises facts not alleged in the Amended Complaint.  The second is that the past "two and a half years" is not the relevant time period; Plaintiff alleges only that she relied on Defendants' August and October 2013 statements, and explicitly disclaims reliance on any statements prior to that date.  *See* Opp. at 16 ("Defendants clearly failed to read the FAC, as Ms. Maomanivong's promissory estoppel claim centers around two promises that Defendants made, neither of which occurred in 2012.").  As such, the relevant consideration is the change in Plaintiff's circumstances since August 2013, which Plaintiff has not alleged or argued.  Without more, the court cannot find that Plaintiff has plausibly alleged that Defendants' August 2013 promise caused her to forbear foreclosure alternatives that were available to her only for a narrow period of time.

Plaintiff's promissory estoppel claim is therefore **dismissed**.  Plaintiff may amend the claim to the extent she can allege specific additional facts supporting the detrimental reliance element of the claim.

**F.  Negligence and Negligence Per Se**

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax,* 158 Cal. App. 4th 983, 994, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (lender acting within the scope of its conventional activities owed no duty of care to the borrower in preparing an appraisal of the security for the loan).  Liability to a borrower for negligence arises only under special circumstances, such as "when the lender actively participates in

the financed enterprise beyond the domain of the usual money lender." *Id.* (quotations omitted); *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists.") (citing *Nymark*).   The test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 231 Cal. App. 3d at 1098 (quotations omitted).

Plaintiff acknowledges that generally a financial institution owes no duty of care to a borrower.  Plaintiff alleges that the following special circumstances exist to find a duty of care: (1) Defendants owed a duty of care pursuant to the Good Samaritan doctrine because they voluntarily came to her aid during her time of financial distress; (2) Defendants owed a duty of care because they "actively participated in [Plaintiff's] loan modification process for over two years and nine months, a process that was significantly delayed by Defendants' negligent, unfair, and unlawful conduct" and "assumed a duty of care when they took affirmative action to restrict the non-foreclosure options available to [Plaintiff] by repeatedly informing her that her best option was a loan modification through Defendants, *see* Am. Compl. at ¶¶ 115-117; and (3) Defendants' violation of Sections 2924(a)(6), 2924a(e), 2923.6, and 2923.5 were negligence per se.

### 1. Good Samaritan Doctrine

Generally, a "person who has not created a peril has no duty to come to the aid of another. However, if a volunteer who, having no initial duty to do so, undertakes to come to the aid of another, i.e., the 'good Samaritan,' he or she is under a duty to exercise due care in performance. Such a volunteer is liable if (1) his or her failure to exercise due care increases the risk of harm, or (2) the harm is suffered because of the other's reliance upon the undertaking." *Greyhound Lines, Inc. v. Dep't of the California Highway Patrol*, 213 Cal. App. 4th 1129, 1136 (2013).

**United States District Court**
For the Northern District of California

1     Plaintiff cites to no cases, and the court has found none in its own research, where a financial

2 institution's involvement in a borrower's loan modification process was found to invoke the Good

3 Samaritan doctrine.  The one case cited by Plaintiff does not involve issues analogous to those in

4 this case.  In *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850 (1968), homeowners in a

5 residential tract development sued various parties involved in development for damage resulting

6 from ill-designed foundations.  The court held that the bank that had participated "as a buyer and

7 seller of land and lender of funds" was not vicariously liable as a joint venturer for negligence of the

8 builder, but could be liable for its own negligence because it "voluntarily undertook business

9 relationships" with the builder and developer to develop tract homes, the prospective buyers of

10 which would be directed to the bank for their financing.  *Id.* at 864.  These facts are clearly

11 dissimilar from Plaintiff's claim, which asserts that Defendants' participation in Plaintiff's loan

12 modification application constitutes the voluntary undertaking sufficient to invoke the Good

13 Samaritan doctrine.

14     Accordingly, Plaintiff's negligence claim, insofar as it is based on the Good Samaritan

15 doctrine, fails as a matter of law.  Amendment cannot cure this deficiency.  The claim is **dismissed**

16 **without leave to amend.**

17     **2. Special Circumstances**

18     Plaintiff's second theory is that Defendants' involvement in Plaintiff's loan modification

19 process constitutes the special circumstances necessary to create a duty of care on the part of the

20 financial institution.

21     While it appears that the question of whether a lender owes a duty of care to a borrower in

22 the loan modification process is relatively unsettled, the most recently published case law from the

23 California Court of Appeal persuades the court that the circumstances presented in this case do not

24 amount to the special circumstances sufficient for a negligence claim against Defendants.  *See*

25 *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013).

26     In *Lueras*, the plaintiff homeowner requested a loan modification from the lender in 2009.

27 This request resulted in two years of confusion, during which the plaintiff accepted one forbearance

28 agreement and paid reduced payments under its terms, then was told that his loan modification

United States District Court
For the Northern District of California

1  request had been accepted but also declined.  *Id.* at 59.  The plaintiff's efforts to contact the lender to

2  clarify whether he was actually eligible for loan modification were unsuccessful, and eventually the

3  plaintiff's house was sold at a foreclosure sale.  *Id.* at 59-60.  The plaintiff brought a negligence

4  claim, alleging that the lender and trustee "had a duty to offer [the plaintiff] a loan modification and

5  breached that duty by refusing to do so . . . [and also] breached their duty of care by 'failing to

6  timely and accurately respond to customer requests and inquiries,' by 'failing to comply with state

7  consumer protection laws, properly service the loan, and use consistent methods to determine

8  modification approvals,' and by 'failing to . . . record proper land records . . . and ensure chain of

9  title prior to foreclosing and to stop all foreclosure sales that are unlawful.'"  *Id.* at 63.

10        The *Lueras* court first noted the general rule, stated in *Nymark*, that a "financial institution

11  owes no duty of care to a borrower when the institution's involvement in the loan transaction does

12  not exceed the scope of its conventional role as a mere lender of money."  *Id.* at 63 (citing *Nymark*,

13  231 Cal. App. 3d at 1096).  The court then noted that several federal district courts had concluded

14  that a lender owes no duty of care to a borrower in modifying a loan.  For example, in *Armstrong v.*

15  *Chevy Chase Bank, FSB*, No. 11-cv-05664 EJD, 2012 WL 4747165 (N.D. Cal. Oct. 3, 2012), the

16  plaintiffs alleged that the lender had stated that the plaintiffs would be offered a loan modification if

17  their loan was brought current, but when they actually brought the loan current, they were offered a

18  forbearance plan instead of a modification.  The court dismissed the plaintiffs' negligence claim

19  based on this conduct, explaining that "a loan modification, which at its core is an attempt by a

20  money lender to salvage a troubled loan, is nothing more than a renegotiation of loan terms.  This

21  renegotiation is the same activity that occurred when the loan was first originated; the only

22  difference being that the loan is already in existence.  Outside of actually lending money, it is

23  undebatable that negotiating the terms of the lending relationship is one of the key functions of a

24  money lender.  For this reason, numerous cases have characterized a loan modification as a

25  traditional money lending activity."  *Id.* at 2012 WL 4747165 at *4 (citation and formatting

26  omitted).  *See also Sanguinetti v. CitiMortgage, Inc.*, No. 12-cv-5424-SC, 2013 WL 4838765 at *6

27  (N.D. Cal. Sept. 11, 2013) ("Loan modifications are part of the lending process, and negotiating a

28  lending agreement's terms is one of a bank's key functions"; dismissing plaintiffs' negligence claim

**United States District Court**

For the Northern District of California

1   against lender where plaintiffs requested loan modification but lender "consistently mismanaged

2   their requests by ignoring them and failing to give them correct paperwork and information");

3   *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2010 WL 4285006 at *4 (N.D. Cal.

4   Oct. 22, 2010) (defendant lender did not have a duty "to complete the loan modification process"

5   even where lender "expressed confidence that a loan modification would be approved once all

6   documents were received from the Plaintiffs and assured Plaintiffs that no foreclosure sale would

7   occur while negotiations for the modification were pending" yet sold the home in a trustee's sale

8   nonetheless); *Lueras*, 221 Cal. App. 4th at 64-65 (citing above cases).

9          However, the *Lueras* court also noted that "[o]ther United States District Courts have

10  concluded a lender might owe a borrower a duty of care in negotiating or processing an application

11  for a loan modification."  *Id.* at 65.  For example, in *Ansanelli v. JP Morgan Chase Bank, N.A.*, No.

12  10-cv-03892-WHA, 2011 WL 1134451 at *7 (N.D. Cal. Mar. 28, 2011), the plaintiffs alleged that

13  the lender "dragged the [p]laintiffs along through a slow, frustrating, redundant and fraudulent

14  modification process," and "continually demanded piecemeal and duplicative paperwork [and]

15  indicated that the file was both complete and incomplete and that the process was stalled and

16  proceeding."  *Id.* at *1.  The *Ansanelli* court found that the defendant "went beyond its role as a

17  silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to

18  engage with them concerning" a plan for the plaintiffs to pay a reduced mortgage payment for a term

19  as a prerequisite for a loan modification, and denied a motion to dismiss a negligence claim against

20  the lender.  *Id.* at *7.  While some courts have disagreed with this holding from *Ansanelli*, see

21  *Sanguinetti*, 2013 WL 4838765 at *6 (finding *Ansanelli* "unpersuasive"), other courts have followed

22  it.  *See, e.g.*, *Robinson v. Bank of Am.*, No. 12-CV-00494-RMW, 2012 WL 1932842 at * 7 (N.D.

23  Cal. May 29, 2012) (plaintiff sufficiently stated negligence claim where lender and borrower entered

24  into a loan modification agreement, but lender "executed and breached the modification agreement,

25  then engaged in a series of contradictory and somewhat misleading communications with

26  plaintiff—in person, in writing, and by phone—regarding the status of his loan").

27         After noting these conflicting lines of cases, the *Lueras* court concluded that "a loan

28  modification is the renegotiation of loan terms, which falls squarely within the scope of a lending

**United States District Court**

For the Northern District of California

institution's conventional role as a lender of money" because "[a] lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies." *Lueras*, 221 Cal. App. 4th at 67.  The court then analyzed the *Nymark* factors to determine whether, in the circumstances presented, the lender owed the borrower a duty of care, and concluded that it did not:

> The [*Nymark*] factors do not support imposition of a common law duty to offer or approve a loan modification.  If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct.  If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct.

*Lueras*, 221 Cal. App. 4th at 67.  The court found that the lender and the trustee "did not have a common law duty of care to offer, consider, or approve a loan modification, or to offer [the plaintiff] alternatives to foreclosure.  Likewise, [they] did not have a duty of care to handle [the plaintiff's] loan in such a way to prevent foreclosure and forfeiture of his property." *Id.* at 68 (quotations omitted).

Plaintiff cites to *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 900 (2013), in which the court concluded that the plaintiff had stated a negligence claim against a lender who had told the plaintiff that it was highly probable that he would get a modification of his construction loan but then did not offer the loan modification and refused to postpone the planned foreclosure sale. The court concluded that the lender defendant owed the plaintiff a duty to review his request for a loan modification in good faith. *Id.* at 899-901.  However, the *Jolley* court acknowledged it was dealing with a construction loan, not a residential home loan "where, save for possible loan servicing issues, the relationship ends when the loan is funded," *id.* at 901, and thus its holding is inapplicable to the present circumstances.  Furthermore, the *Lueras* court explicitly "disagree[d] with *Jolley* to the extent it suggests a residential lender owes a common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives." *Lueras*, 221 Cal. App. 4th at 67.

United States District Court

For the Northern District of California

1    Thus, although there appears to be some disagreement about whether a lender owes a

2  borrower a duty of care during the loan modification process, the court will follow the California

3  Court of Appeal's published opinion in *Lueras*, as it comports with this court's analysis of the

4  *Nymark* factors in the present circumstances.

5    First, the extent to which the transaction was intended to affect Plaintiff is limited.  *See*

6  *Ottolini v. Bank of Am.*, No. C-11-0477 EMC, 2011 WL 3652501 at *7 (N.D. Cal. Aug. 19, 2011)

7  (finding that the first *Nymark* factor was "somewhat remote under the circumstances of the case"

8  because "[e]ven if Defendants allegedly mishandled Plaintiff's request for loan modification, the

9  loan modification application was never acted on.  This stands in contrast to the facts in [*Ansanelli*],

10  where the lender agreed to place the borrower on a loan modification plan.").  With respect to the

11  second and third *Nymark* factors, the harm to Plaintiff was not particularly foreseeable and has not

12  occurred with certainty since there is no indication that loan modification actually would have been

13  approved.  *Id.* ("Absent a likelihood of approval, [the plaintiff] suffered no ultimate injury from the

14  mishandling of his application.").  The fourth *Nymark* factors considers the closeness of the

15  connection between the defendant's conduct and the injury suffered.  As in *Lueras*, this factor

16  counsels against a finding of duty because Plaintiff's injury was the result of her default on the loan,

17  not Defendants' conduct during the loan modification process.  *Lueras*, 221 Cal. App. 4th at 67 ("If

18  the modification was necessary due to the borrower's inability to repay the loan, the borrower's

19  harm, suffered from denial of a loan modification, would not be closely connected to the lender's

20  conduct.").  Furthermore, "the closeness of the connection between Defendants' conduct and the

21  injury suffered is similarly remote absent a likelihood that the modification would have been

22  approved."  *Ottolini*, 2011 WL 3652501 at *7.  As for the fifth factor, moral blame cannot be

23  attached to Defendants' conduct where Plaintiff's default created her need for a modification.

24  *Lueras*, 221 Cal. App. 4th at 67 ("If the lender did not place the borrower in a position creating a

25  need for a loan modification, then no moral blame would be attached to the lender's conduct.").

26    Finally, the policy of preventing future harm cuts both ways, as summarized aptly by the

27  court in *Ottolini*:

28

**United States District Court**
For the Northern District of California

1  Imposing negligence liability may give lenders an incentive to handle loan modification
2  applications in a timely and responsible manner. On the other hand, absent a duty in the first
   place to modify a loan or even to evaluate such an application under objective standards
3  limiting the lender's discretion, imposing negligence liability for the mishandling of loan
   modification applications could be a disincentive to lenders from ever offering modification.

4  *Ottolini*, 2011 WL 3652501 at *7.

5        Here, where Plaintiff required a loan modification because she had defaulted on her loan, the

6  loan modification had not progressed to a concrete stage, and there was no indication of the

7  likelihood that her loan modification would have been granted, the court finds that the balance of

8  *Nymark* factors weighs against finding that special circumstances exist to create a duty owed by

9  Defendants to Plaintiff with respect to her attempt to obtain a loan modification.  Plaintiff's second

10  theory of negligence is **dismissed with leave to amend.**  Plaintiff may amend this theory only

11  insofar as he can plead additional allegations that establish that Defendants owed her a duty of care.

12       **3.  Negligence Per Se**

13       Negligence per se is an evidentiary presumption that a party failed to exercise due care if: (1)

14  it violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused

15  death or injury to a person or property; (3) the death or injury resulted from an occurrence of the

16  nature the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the

17  death or the injury to his or her person or property was one of the class of persons for whose

18  protection the statute, ordinance, or regulation was adopted.  Cal. Evid. Code § 669.  This doctrine

19  does not establish a cause of action distinct from negligence; instead, "an underlying claim of

20  ordinary negligence must be viable before the presumption of negligence of Evidence Code section

21  669 can be employed."  *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal.

22  2009) (citing *Cal. Serv. Station & Auto Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th

23  1166, 1178 (1998)).

24       Plaintiff does not cite to any case, nor has the court found any, in which a court has held that

25  a violation of Sections 2924(a)(6), 2924a(e), 2923.6 or 2923.5 can constitute the breach of duty for a

26  negligence per se claim.  Indeed, such claims would be inappropriate, as permitting negligence

27  liability would expand the scope of the remedies the California legislature contemplated for a

28  violation of those statutes.  *See Graham v. U.S. Bank, N.A.*, No. 13-cv-1613-NC, 2013 WL 2285184

United States District Court

For the Northern District of California

1    at *7 (N.D. Cal. May 23, 2013) (declining to allow violation of Section 2923.5 to serve as the basis

2    for negligence claim because "to borrow the duty of care from § 2923.5 and award damages [when

3    no damages are available under the statute] under a common law negligence theory would

4    circumvent the scope of relief prescribed by the state legislature").  Because Plaintiff's negligence

5    per se claim fails as a matter of law and cannot be cured by amendment, it is **dismissed** without

6    leave to amend.

7    **G.  UCL (Cal. Bus. & Prof. Code § 17200)**

8           Section 17200 prohibits unfair competition, which is defined as, *inter alia,* "any unlawful,

9    unfair or fraudulent business act or practice."  Cal. Bus. Prof. Code § 17200.  Because Section

10   17200 "is written in the disjunctive, it establishes three varieties of unfair competition—acts or

11   practices which are unlawful, or unfair, or fraudulent . . . ."  *Cel–Tech Communications, Inc. v. Los*

12   *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  In order to state a claim under the

13   unlawful prong, a plaintiff must allege facts that show that any of a defendant's business

14   practices—or conduct which can be characterized as a business practice—violates the law, meaning

15   any civil or criminal, federal, state or municipal, statutory, regulatory, or court-made law.

16   *California v. McKale,* 25 Cal.3d 626, 632 (1979).  Conduct is "fraudulent" if it is likely to deceive

17   any member of the public.  *Weinstat v. Dentsply Int'l., Inc.,* 180 Cal. App. 4th 1213 n. 8 (2010).

18   Whether a business practice is "unfair" requires an analysis of whether (i) there exists substantial

19   consumer injury, (ii) the injury is not outweighed by countervailing benefits to consumers or

20   competition, and (iii) the injury was not reasonably avoidable by the consumer.  *Camacho v. Auto.*

21   *Club of So. Cal.,* 142 Cal. App. 4th 1294, 1403 (2006).

22          Plaintiff alleges that Defendants engaged in a variety of unlawful or unfair business

23   practices.  The unlawful practices are Defendants' alleged violations of Sections 2924(a)(6),

24   2924a(e), 2923.6 and 2923.5.  Defendants' allegedly unfair practices are: (1) executing and

25   recording false and misleading documents; (2) executing and recording legally operative property

26   documents without the authority to do so; (3) neglecting to contact Plaintiff before recording the

27   Notice of Default to assess her financial situation and discuss foreclosure alternatives; (4) repeatedly

28   informing Plaintiff that she likely qualified for a loan modification and/or that her application was

United States District Court
For the Northern District of California

complete and being reviewed, then delaying the decision on her application; (5) losing or misplacing Plaintiff's loan modification application and demanding that she submit multiple supplemental applications; (6) mistakenly sending Plaintiff letters that contained false information regarding communications that never took place; and (7) making empty promises to Plaintiff that Defendants would not initiate the foreclosure process or move forward with the foreclosure but nonetheless setting a date for the trustee's sale without first making a determination on Plaintiff's application. Am. Compl. at ¶¶ 132.

### 1. Standing

To have standing to sue under the UCL, a private plaintiff must allege he or she "has suffered injury in fact and has lost money or property." Cal. Bus. Prof. Code § 17204. In *Kwikset Corp. v. Superior Court*, the California Supreme Court held that to satisfy the standing requirement of Section 17204, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by* the unfair business practice or false advertising that is the gravamen of the claim." 51 Cal.4th 310, 322 (2011) (emphasis in original). A UCL claim will survive a motion to dismiss based on standing if the plaintiff can plead "general factual allegations of injury resulting from the defendant's conduct." *Id.* at 327.

"The *Kwikset* court held a plaintiff can satisfy the economic injury prong of the standing requirement in 'innumerable ways' but listed four injuries that would qualify under Section 17204: (1) the plaintiff surrendered more or acquired less in a transaction than the plaintiff otherwise would have; (2) the plaintiff suffered the diminishment of a present or future property interest; (3) the plaintiff was deprived of money or property to which the plaintiff had a cognizable claim; or (4) the plaintiff was required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Lueras*, 221 Cal. App. 4th at 81-82 (quoting *Kwikset*, 51 Cal. 4th at 323).

Defendants contend that Plaintiff cannot allege the threshold standing requirement because she was already in default by the time Defendants committed the allegedly unfair or unlawful acts, and therefore any economic injury was caused by Plaintiff's default, not by any conduct of Defendants. In *Jenkins v. JP Morgan Chase Bank, N.A.*, the plaintiff homeowner contacted the

United States District Court

For the Northern District of California

1   lender to request a loan modification but alleged that the lender "gave her 'the run around' for nearly

2   two years and failed to assist her with refinancing her loan," including by advising her to cease

3   making payments on her loan in order to qualify for a loan modification.  216 Cal. App. 4th 497, 503

4   (2013).  Subsequently, the plaintiff defaulted and the lender recorded a notice of trustee's sale

5   (although the sale was postponed and did not occur).  *Id.*  The court found that the "caused by"

6   prong of the UCL standing requirement was not met because "[i]t is . . . indisputable [that] [the

7   plaintiff's] default triggered the lawful enforcement of the power of sale clause in the deed of trust,

8   and it was the triggering of the power of sale clause that subjected [the plaintiff's] home to

9   nonjudicial foreclosure . . . . [and the plaintiff] acknowledged her default occurred prior to the six

10  unlawful or unfair acts she alleges as the basis of her UCL action."  *Id.* at 523.  The court upheld the

11  trial court's demurrer to the UCL claim without leave to amend, since no amendment could cure the

12  standing defect: "Amending the [operative complaint] to plead the previously asserted wrongful acts

13  with more specificity will not change the fact these purported actions occurred *after* [the plaintiff's]

14  default on her loan. Likewise, amending the complaint to allege new wrongful acts, also occurring

15  after her default, would not assist her. Because [the plaintiff] cannot plead facts that would cure the

16  standing defect in her complaint, we conclude the court properly sustained the demurrer without

17  leave to amend as to the third cause of action."  *Id.* at 523-24.

18         Here, Plaintiff makes the conclusory allegations that "as a direct and proximate result of

19  Defendants' unfair and unlawful conduct, Plaintiff['s] interest in her home is in jeopardy" and she

20  has "lost money and suffered harm to her property, and, therefore, she has suffered injury in fact."

21  *Id.* at ¶¶ 129, 138, 153.  However, Plaintiff does not allege *how* she has lost money and suffered

22  harm to her property, or, more importantly, how such injuries were *caused by* Defendants' conduct,

23  considering that Plaintiff sought a loan modification after she defaulted because of her financial

24  difficulties.  *See Jenkins*, 216 Cal. App. 4th at 523 ("As [the plaintiff's] home was subject to

25  nonjudicial foreclosure because of [the plaintiff's] default on her loan, which occurred before

26  Defendants' alleged wrongful acts, [the plaintiff] cannot assert the impending foreclosure of her

27  home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions.").  Thus

28  Plaintiff's allegations do not suffice to meet the standing requirement.

United States District Court

For the Northern District of California

Plaintiff's citation to *Lueras* is unavailing.  As stated above, *see supra* Section III.F.2, *Lueras* involved a homeowner whose request for a loan modification from the lender resulted in two years of confusion and miscommunication, and ultimately the foreclosure sale of Lueras's home.  *Lueras*, 221 Cal. App. 4th at 59-60.  The *Lueras* court dismissed the plaintiff's Section 17200 claim because it found that the plaintiff had not sufficiently alleged the causal connection between the lender's allegedly unlawful, unfair, or fraudulent conduct and Lueras's economic injury (the foreclosure sale of his home) to create standing for a UCL claim.  *Id.* at 82.  However, the *Lueras* court granted leave to amend and distinguished its circumstances from *Jenkins*:

> This case is similar to *Jenkins* in that Lueras's default on the loan, not any conduct on the part of Bank of America, triggered foreclosure proceedings.  *Jenkins* is distinguishable, however, because, in this case, Lueras might be able to allege that Bank of America's alleged misrepresentations about his loan modification and the status of the foreclosure sale, or Bank of America's failure to work with him in good faith to identify and to try to implement a permanent solution, caused him to lose his home through a foreclosure sale.

*Id.* at 83.

During the hearing, Plaintiff's counsel referenced another case not mentioned in Plaintiff's opposition.  *See Dias v. JP Morgan Chase, N.A.*, No. 5:13-CV-05327-EJD, 2014 WL 2890255 (N.D. Cal. June 25, 2014).  In *Dias*, the plaintiffs were current on their loan payments when they first began discussing loan modifications with the lender in order to secure a "more comfortable monthly mortgage payment," and stopped making payments only because the lender had advised the plaintiffs that they would not be considered for a modification if they were current on their payments.  *Id.* at *4.  Subsequently, the lender "actually approved Plaintiffs for a loan modification and instructed them to make three trial payments from February 2013 through April 2013," but when the plaintiffs attempted to submit their first payment under the  loan modification, the payment was "inexplicably refused."  *Id.* at *6.  The *Dias* court denied a motion to dismiss the plaintiff's unfair business practices claim and found that the plaintiffs had met the standing requirement because they alleged that they suffered money damages, attorneys' fees, damage to their credit, and costs of suit as a result of the foreclosure initiated by the defendants, even though the foreclosure sale itself had not yet occurred.  *Dias* is factually distinguishable from the present case.  Here, unlike *Dias*, Plaintiff defaulted on her loan because of her own financial difficulties, *see* Am. Compl. at ¶ 15, and

United States District Court

For the Northern District of California

there is no allegation that she was induced through the lender's unfair conduct to discontinue her monthly payments.  Furthermore, in *Dias*, the lender actually approved the plaintiffs for a loan modification, so the causal connection between the lender's failure to abide by the terms of the loan modification and the plaintiffs' foreclosure-related injuries was stronger.

Plaintiff has pointed the court to no other cases, and the court has found none in its own research, in which a court has found that a homeowner has standing to bring a UCL claim against a lender for the lender's allegedly unlawful, unfair, or fraudulent conduct occurring after the homeowner's default, where the default was not induced by the conduct of the lender and where the conduct has not yet led to a foreclosure sale.  Instead, other courts appear to have followed *Jenkins* in finding that such circumstances do not create standing.  *See Tamburri v. Suntrust Mortgage, Inc.*, No. 11-CV-02899-JST, 2013 WL 4528447 at *8 (N.D. Cal. Aug. 26, 2013) ("Plaintiff did not lose any money or property 'as a result of' any of Defendants' actions, let alone suffer a monetary loss capable of restitution by Defendants.  Plaintiff has not paid any fees or charges that she alleges were incurred as a result of foreclosure. The foreclosure was initiated only after Plaintiff defaulted on her loan. Thus,  Plaintiff cannot assert that her alleged economic injury was 'caused by' Defendants' acts, because the asserted wrongful actions occurred *after* Plaintiff's default on her loan.") (citing *Jenkins*, 216 Cal. App. 4th at 521) (emphasis in original); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 614 (2014) ("Graham does not allege facts demonstrating he has standing to sue under the UCL because he does not allege sufficient facts showing a causal link between the alleged UCL violations and an injury in fact resulting in loss of money or property . . . . [H]is prospect of losing the home to foreclosure is the result of default, not the alleged conduct of defendants.") (citing *Jenkins*).

Because Plaintiff cannot allege facts establishing standing, his UCL claim fails as a matter of law and is **dismissed without leave to amend**.[11]

//

---

[11] Because the court finds that Plaintiff has not sufficiently alleged that she has standing to bring a claim under the UCL, it dismisses the claim without reaching the question of whether Plaintiff has sufficiently alleged conduct constituting violations of the UCL.

1

### IV.  CONCLUSION

2          For the foregoing reasons, the motion is **granted in part and denied in part.**  Any amended

3   complaint shall be filed by **September 30, 2014.**

4

5          IT IS SO ORDERED.

6

7   Dated:  September 15, 2014

8



_____
DONNA M. RYU
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28