**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11  VEOMANY MAOMANIVONG,                    No. C-13-05433 DMR

12          Plaintiff(s),                    **ORDER GRANTING DEFENDANTS'**
                                             **MOTION TO DISMISS SECOND**
13      v.                                   **AMENDED COMPLAINT [DOCKET**
                                             **NO. 49]**
14  NATIONAL CITY MORTGAGE CO., ET AL.,

15          Defendant(s).
    _____/
16

17          Before the court is a motion to dismiss certain claims in Plaintiff Veomany Maomanivong's

18  Second Amended Complaint[1] filed by Defendants PNC Bank, N.A. (sued as "National City

19  Mortgage Co. d/b/a PNC Mortgage, an unknown business entity"[2]) and Deutsche Bank Trust

20  Company Americas as Trustee RALI 2007-QS3 ("Deutsche Bank") pursuant to Federal Rule of

21  Civil Procedure 12(b)(6).  The court finds that this motion may be determined without oral

22  argument.  Civil L.R. 7-1(b).   For the reasons stated below, the motion is **granted.**

23
24
25  _____

    [1]  *See* Second. Am. Compl. ("SAC") [Docket No. 46].
26
    [2]  Plaintiff's allegations refer to "National City Bank" and "National City Mortgage"
27  interchangeably, and Defendants appear to refer to these entities as "PNC."  Since the relationship
    between National City Bank, National City Mortgage, and PNC is not relevant for purposes of this
28  motion, the court will follow the parties' terminology, but notes that these terms all refer to Defendant
    PNC Bank.

United States District Court

For the Northern District of California

# I. BACKGROUND

**A. Factual Allegations**[3]

The factual allegations in the SAC are nearly identical to the allegations in Plaintiff's First Amended Complaint ("FAC"), *see generally* Docket No. 27. The court will note allegations that are new or changed in the SAC.

Plaintiff Veomany Maomanivong lives in and owns a residential property in Santa Rosa, California (the "Property"). SAC at ¶ 1. On November 13, 2006, Plaintiff took out a mortgage loan from National City Mortgage secured by the Deed of Trust on the Property, in the amount of $555,560. SAC at ¶ 10, Ex. A.

**1. Sequence of Beneficiaries and Trustees**

The Deed of Trust named "National City Mortgage a division of National City Bank" as the lender and beneficiary and "National City Bank" as the Trustee. *Id.*, Ex. A at 1-2.

On April 9, 2007, "National City Mortgage, a division of National City Bank" executed an Assignment of Deed of Trust, granting, assigning, and transferring all beneficiary interest in the Deed of Trust to "National City Mortgage Co., a subsidiary of National City Bank." SAC at ¶ 14, Ex. B.

On July 12, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee for the lender ("National City Bank for National City Mortgage, a Division of National City Bank"), executed an Assignment of Deed of Trust that granted, assigned, and transferred all beneficiary interest in the Deed of Trust to Deutsche Bank. *Id.* at ¶ 16, Ex. C.

On January 24, 2012, Cal-Western Reconveyance Corporation ("Cal-Western Corporation") executed and recorded a Notice of Default on the Property. *Id.* at ¶ 22, Ex. D (Notice of Default recorded January 24, 2012). The Notice of Default states that Cal-Western Corporation is "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under [the] deed of trust." *Id.* at Ex. D. Plaintiff alleges that prior to January 24, 2012,

---

[3] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

**United States District Court**
For the Northern District of California

1  no Substitution of Trustee was recorded substituting Cal-Western Corporation as the trustee of the

2  Deed of Trust. *Id.* at ¶ 23.

3        On April 6, 2012, Deutsche Bank executed a Substitution of Trustee substituting Cal-

4  Western Corporation in as trustee of the Deed of Trust on the Property. *Id.* at ¶ 31, Ex. F.

5        On September 26, 2013, Cal-Western LLC executed a Notice of Trustee's Sale on the

6  Property, setting a trustee's sale date for October 13, 2013. *Id.* at ¶ 42, Ex. H. The Notice of

7  Trustee's Sale was recorded on October 1, 2013. *Id.*

8        **2. Plaintiff's Default and Loan Modification Applications**

9        In July 2011, Plaintiff began experiencing financial difficulty. *Id.* at ¶ 15. Around August

10 2011, Plaintiff contacted National City Bank to request financial assistance, but was told by a loan

11 agent that National City Bank's policy was to refrain from providing borrowers loan options unless

12 the borrower was at least three months behind on her monthly payments and was therefore

13 considered "delinquent." *Id.* at ¶ 17.

14       In October 2011, Plaintiff defaulted on her loan. *Id.* at ¶ 19. She again contacted National

15 City Mortgage, who told Plaintiff that she could not be considered for loan assistance because her

16 loan was not yet "delinquent." *Id.* at ¶ 20.

17       Between October 2011 and February 2012, Plaintiff pooled her extra funds, liquidated assets,

18 and obtained financial commitments from family and friends in order to acquire the money

19 necessary to pay her outstanding arrears and bring her loan current. *Id.* at ¶ 21.

20       On January 24, 2012, as stated above, Cal-Western Corporation executed a Notice of Default

21 on the Property. *Id.* at ¶ 22, Ex. D.

22       In February 2012, Plaintiff contacted National City Mortgage to obtain an accounting of her

23 arrears so that she would know what she needed to pay in order to bring her loan current. *Id.* at ¶ 24.

24 She informed the loan agent (Ms. Williams) that she wanted to reinstate her loan and bring it current

25 by tendering complete payment of her arrears. *Id.* at ¶ 24. However, Ms. Williams "urged Ms.

26 Maomanivong to refrain from reinstating her loan and, instead, apply for a loan modification

27 through Defendants, assuring Ms. Maomanivong that she qualified for a loan modification." *Id.*

28 Ms. Williams told Plaintiff that modification was "her best option," because it would bring her loan

**United States District Court**
For the Northern District of California

current without requiring Plaintiff to pay a large lump-sum payment to reinstate the loan.  *Id.*  Ms. Williams explained that making such a reinstatement payment would require Plaintiff to continue making payments under the original interest rate of the loan.  *Id.*

Later in February 2012, Plaintiff received a loan modification application from Defendants, which she opened immediately, completed, and submitted to Defendants for review, attaching all of the requested documentation.  *Id.* at ¶ 25.

On April 2, 2012, Plaintiff contacted National City Mortgage to follow up on her loan modification application, and spoke to a "Loss Mitigation Specialist" named Ernie, who informed Plaintiff that "Defendants were currently reviewing her application and would likely make a decision within four to six weeks."  *Id.*  Ernie instructed Plaintiff to submit supplemental financial documentation within two weeks.  *Id.*  Plaintiff submitted the required documents that day.  *Id.* at ¶ 26.

On April 6, 2012, Plaintiff received a letter from National City Mortgage dated April 4, 2012 informing Plaintiff that her loan modification application was incomplete, and requesting additional financial documents.  *Id.* at ¶¶ 28-29, Ex. E.  On the same day, Plaintiff submitted the requested documents in the manner requested by Defendants.  *Id.* at ¶ 29.  Plaintiff also contacted National City Mortgage again, and spoke with a Loss Mitigation Specialist named Rachael about the letter dated April 4, 2012.  *Id.* at ¶ 30.  Rachael informed Plaintiff that her application required additional documentation, and instructed Plaintiff to submit a supplemental loan modification application. Rachael also told Plaintiff that Rachael would send Plaintiff a supplemental loan modification application form.  *Id.* at ¶ 30.

In late April 2012, Plaintiff received a loan modification package from National City Mortgage.  She immediately completed the application and submitted it with the required documentation.  *Id.* at ¶ 32.  In May 2012, Plaintiff contacted National City Mortgage to inquire about the status of her application, and spoke with Ryan, a loan specialist who told Plaintiff that the application had been received and that PNC Bank would contact Plaintiff within six to eight weeks if it required additional financial information.  *Id.* at ¶ 33.  Ryan reassured Plaintiff that she was "pre-approved" for loan modification, and that she should "handle her finances accordingly."  *Id.*

United States District Court
For the Northern District of California

In September 2012, Plaintiff contacted National City Mortgage again about the status of her application. This time Plaintiff spoke with a loan specialist named Alex, who informed Plaintiff that Defendants currently were reviewing her application and expected to render a decision within six to eight weeks. *Id.* at ¶ 34. Alex then instructed Plaintiff to provide updated documentation to supplement her supplemental application. *Id.* Immediately after the conversation, Plaintiff submitted the requested documents. *Id.* at ¶ 35.

On October 15, 2012, National City Mortgage sent Plaintiff a letter stating, "The review of your hardship request assistance has been completed. Unfortunately, as of 10-15-12, we are unable to approve or finalize your request for assistance due to the following reason(s): We did not receive the completed Borrower Package as requested. If you would like to continue the review process, please forward the requested information immediately." *Id.* at ¶ 36, Ex. G. Upon receiving this letter, Plaintiff immediately contacted "Defendants" and spoke with a loan agent. *Id.* at ¶ 37. The loan agent initially told Plaintiff that the October 15 letter requested supplemental documentation, but then informed Plaintiff, based on his review of her file, that Plaintiff had in fact submitted the required documents and the October 15 letter had been sent by mistake. *Id.* Nonetheless, the loan agent instructed Plaintiff to submit a supplemental loan modification application, and told Plaintiff that she would receive an application package within six to eight weeks. *Id.* Plaintiff received the package in March 2013 and immediately completed and submitted it. *Id.* at ¶ 38.

In July 2013, Plaintiff again contacted Defendants and again spoke with a loan agent who instructed her to submit supplemental financial documents, which Plaintiff did immediately. *Id.* at ¶ 39.

In August 2013, Plaintiff contacted Defendants and spoke with a loan agent, who told Plaintiff that her application was still under review. Plaintiff asked why the application process was taking so long, and informed the loan agent that she was ready and willing to pursue other loan options, including reinstating her loan by either tendering payment of her arrears or filing for

5

**United States District Court**
For the Northern District of California

1  Chapter 13 bankruptcy protection.[4]  *Id.* at ¶ 40.  The loan agent informed Plaintiff that she should

2  wait until Defendants completed their review of Plaintiff's loan application before pursuing other

3  loan assistance options, and told Plaintiff that a loan modification was Plaintiff's "best option" going

4  forward.  *Id.* at ¶ 40.  In addition, the loan agent promised Plaintiff that Defendants would not

5  proceed with any foreclosure activities until they made a final determination on her loan

6  modification application, and in the event that Plaintiff's application was denied, she would have

7  ample time to pursue other, "more costly" foreclosure prevention alternatives.  Based on this

8  promise, Plaintiff refrained from reinstating her loan either by tendering payment of her arrears or

9  filing for Chapter 13 bankruptcy protection.  *Id.* at ¶ 41.

10       On October 1, 2013, Cal-Western LLC recorded a Notice of Trustee's Sale on the Property,

11  setting a trustee's sale date for October 13, 2013.  *Id.* at ¶ 42, Ex. H.  On October 2, 2013, Plaintiff

12  received this Notice of Trustee's Sale on her front porch.  Plaintiff contacted National City Mortgage

13  immediately, and spoke with a Loan Mitigation Specialist named Donald, who informed Plaintiff

14  that the notice was merely posted as a matter of company policy, but promised that Defendants

15  would not proceed with any trustee's sale unless they first made a final decision on her pending loan

16  modification application, and in the event that her application was denied, she would have at least

17  thirty days to dispute Defendants' determination and/or pursue other non-foreclosure options.  *Id.* at

18  ¶ 43.

19       On October 22, 2013, Plaintiff's counsel obtained a temporary restraining order to prevent

20  Defendants from executing the trustee's sale.  *Id.* at ¶ 44, Ex. I.

21  **B.  Order Dismissing Claims in FAC**

22       In the FAC, Plaintiff brought seven causes of action against all Defendants: (1) violation of

23  California Civil Code § 2924(a)(6); (2) violation of California Civil Code § 2934a(e); (3) violation

24  of California Civil Code § 2923.6; (4) violation of California Civil Code § 2923.5; (5) promissory

25  estoppel; (6) negligence and negligence per se; and (7) violation of the California Unfair

26

27       [4] Chapter 13 bankruptcy "allows a homeowner in default to reinstate the original loan payments,
pay the arrearages over time, avoid foreclosure, and retain the home."  *Aceves v. U.S. Bank, N.A.*, 192
28  Cal. App. 4th 218, 223 (2011).

6

United States District Court
For the Northern District of California

1  Competition Law ("UCL"), codified at California Business and Professions Code § 17200, et seq.

2  PNC Bank and Deutsche Bank moved to dismiss all seven claims against them.  *See* Docket No. 35.

3  On September 15, 2014, the court issued an order dismissing Plaintiff's Section 2924(a)(6),

4  Section 2934a(e), and UCL claims.  *See* Order [Docket No. 42].  The order also dismissed Plaintiff's

5  promissory estoppel and negligence claims, but granted Plaintiff leave to amend.  The court denied

6  the motion to dismiss as to the Section 2923.6 and Section 2923.5 claims.

**C. Claims in SAC**

8  In the SAC, Plaintiff realleges the two claims that were not dismissed in the court's order: (1)

9  violation of California Civil Code § 2923.6 and (2) violation of California Civil Code § 2923.5.  In

10  addition, Plaintiff realleges her (3) promissory estoppel and (4) negligence claims.  Plaintiff has also

11  added a claim for violation of California Civil Code § 2924g, even though she styles her third cause

12  of action as a single "Promissory Estoppel & Civil Code 2924g" claim.[5]

13  Defendants PNC Bank and Deutsche Bank now move to dismiss Plaintiff's promissory

14  estoppel and negligence claims.

**II.  LEGAL STANDARDS**

16  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

17  the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A

18  court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of

19  "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular*

20  *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

---

22  [5] Plaintiff admits in her opposition to the motion to dismiss that her claim for violation of Section 2924g is actually a separate cause of action from her promissory estoppel claim, and that each

23  claim requires different elements.  *See* Opp. [Docket No. 51] at 10-11 ("Detrimental reliance is not an element of Civil Code § 2924g, as borrowers are specifically entitled to seek an injunction to prevent a defendant from unlawfully foreclosing on their property prior to being 'injured.'").

24  Plaintiff has had numerous previous opportunities to pin down her claims. The court's September 15, 2014 order granting in part Defendants' motion to dismiss the FAC did not give Plaintiff carte

25  blanche to add new claims; instead, the court granted her leave to amend to cure specific deficiencies with specific claims.  *See* Order at 20 ("Plaintiff's promissory estoppel claim is therefore dismissed.

26  Plaintiff may amend the claim to the extent she can allege specific additional facts supporting the detrimental reliance element of the claim."); 27 ("Plaintiff's second theory of negligence is dismissed

27  with leave to amend.  Plaintiff may amend this theory only insofar as she can plead additional allegations that establish that Defendants owed her a duty of care.").  Nonetheless, the court will

28  consider the sufficiency of the allegations below.

United States District Court

For the Northern District of California

677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given when justice so requires."  However, "[w]hen a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

## III.  DISCUSSION

### A.  Promissory Estoppel

Plaintiff's promissory estoppel claim is virtually unchanged between the FAC and the SAC. Just like the FAC, the SAC alleges that on two separate occasions, in August and October 2013, Defendants' loan agents clearly and unambiguously promised Plaintiff that Defendants would not foreclose on Plaintiff's home, and Plaintiff relied on these promises and refrained from pursuing her other non-foreclosure options (of tendering payment of her arrears or filing for Chapter 13 bankruptcy protection) that would have prevented the foreclosure process and brought her loan current.[6]  SAC at ¶¶ 76, 82-83.  Plaintiff brings a claim of promissory estoppel against all Defendants to enforce Defendants' promises.

"Promissory estoppel applies whenever a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance would result in an injustice if the promise were not enforced." *Aceves*, *supra* n. 4, 192 Cal. App. 4th at 227.  "The elements of a promissory estoppel claim are (1) a

---

[6]  *See* Order at 17-18 (summarizing Plaintiff's allegations regarding Plaintiff's August and October 2013 conversations with Defendants' loan agents).

United States District Court

For the Northern District of California

1    promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made;

2    (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel

3    must be injured by his reliance." *Id.* at 225.  A promise must "be clear and unambiguous," i.e.,

4    "definite enough that a court can determine the scope of the duty, and the limits of performance must

5    be sufficiently defined to provide a rational basis for the assessment of damages." *Id.* at 226.

6       In the September 15 Order, the court noted that "[a] mortgagor's decision to forbear a

7    foreclosure alternative, such as filing for Chapter 13 bankruptcy, can constitute the detriment or

8    injury required for a promissory estoppel claim. *See Aceves*, 192 Cal. App. 4th at 233 (appellate

9    court reversed the trial court's dismissal of plaintiff's promissory estoppel claim where plaintiff

10    defaulted on home loan and subsequently filed for Chapter 7 bankruptcy, and decided not to convert

11    Chapter 7 proceeding into Chapter 13 proceeding because lender promised to work with her on a

12    loan reinstatement and modification if she would forego further bankruptcy proceedings, but lender

13    did not act as promised and instead completed foreclosure on the plaintiff's home)."  Order at 19.

14    The court also noted a specific deficiency in Plaintiff's theory for promissory estoppel:

15

16       Defendants contend that Plaintiff has not suffered injury as a result of her reliance on the
       August 2013 statement because she remains free to this day to tender payment of the

17       arrearages or to file for Chapter 13 bankruptcy.  In response, Plaintiff explains that the injury
       she suffered was forbearance of foreclosure alternatives available to her only for a narrow

18       period of time: whereas in August 2013 she was ready and able to pay her arrearages or file
       for Chapter 13 bankruptcy because she "had access to corporate and familial lines of credit,"

19       she is no longer able to exercise either option because "over the course of the last two and a
       half years, Defendants have substantially delayed and prevented [Plaintiff] from reinstating

20       her loan for approximately two and a half years.  As a result, over the course of the last two
       and a half years, Defendants have unlawfully added tens of thousands of dollars to her

21       arrears in their own attorneys' fees, late fees, penalties, and charges" such that Plaintiff
       longer has access to the amount of money required to reinstate her loan or to make reduced

22       Chapter 13 delinquency payments. Opp. at 17.

23       The first problem with Plaintiff's response is that it raises facts not alleged in the Amended
       Complaint.  The second is that the past "two and a half years" is not the relevant time period;

24       Plaintiff alleges only that she relied on Defendants' August and October 2013 statements,
       and explicitly disclaims reliance on any statements prior to that date. *See* Opp. at 16

25       ("Defendants clearly failed to read the FAC, as Ms. Maomanivong's promissory estoppel
       claim centers around two promises that Defendants made, neither of which occurred in

26       2012.").  As such, the relevant consideration is the change in Plaintiff's circumstances since
       August 2013, which Plaintiff has not alleged or argued.  Without more, the court cannot find

27       that Plaintiff has plausibly alleged that Defendants' August 2013 promise caused her to
       forbear foreclosure alternatives that were available to her only for a narrow period of time.

28

United States District Court

For the Northern District of California

1    Order at 19-20.  The court then dismissed Plaintiff's promissory estoppel claim, but permitted

2    Plaintiff to "amend the claim to the extent she can allege specific additional facts supporting the

3    detrimental reliance element of the claim."  Order at 20.

4           The SAC does not remedy the defect with Plaintiff's promissory estoppel claim.  Plaintiff's

5    new allegations amount to either rephrasings of what was previously alleged or argument about the

6    meaning of the previously alleged facts.  *See, e.g.*, SAC at ¶ 75 (adding recitation of elements of

7    promissory estoppel); ¶ 77 (changing the phrase "[Plaintiff] **refrained** from pursuing other non-

8    foreclosure options" to "[Plaintiff] **forwent** the right to pursue other non-foreclosure options)

9    (emphasis in original); ¶ 78 (adding that Plaintiff's "reliance on Defendants' promises were

10   reasonable . . . [and] foreseeable" and quoting a case discussing reasonable reliance and

11   foreseeability); ¶ 79 (adding that "[Plaintiff's] reliance on Defendants' promises were detrimental to

12   her, as she forewent her right to pursue other non-foreclosure options").  None of Plaintiff's changes

13   or additions addresses how Plaintiff's circumstances changed between August 2013 and the present

14   such that non-foreclosure options available to her then are no longer available now.  Thus Plaintiff's

15   allegations are insufficient to show that she has suffered injury as a result of her reliance on

16   Defendants' statements, because she remains free to tender payment of the arrearages or to file for

17   Chapter 13 bankruptcy.

18          This is Plaintiff's third attempt to allege a promissory estoppel claim, but it remains

19   insufficient.  For that reason, the court finds that permitting Plaintiff to amend this claim would be

20   futile.  Plaintiff's promissory estoppel claim is **dismissed without leave to amend.**

21   **B.  Violation of Section 2924g**

22          Plaintiff also alleges that Defendants violated California Civil Code § 2924g, which provides

23   that "[t]here may be a postponement or postponements of the sale proceedings . . . at any time prior

24   to the completion of the sale . . . . (C) [b]y mutual agreement, whether oral or in writing, of any

25   trustor and any beneficiary or any mortgagor and any mortgagee."  Cal. Civ. Code § 2924g(c)(1).

26   According to Plaintiff, Defendants violated Section 2924g when they failed to postpone the

27   foreclosure sale despite Defendants' promises to do so in August and October 2013.  SAC at ¶¶ 82-

28   83.

**United States District Court**
For the Northern District of California

1    The first problem with Plaintiff's claim is that Plaintiff's allegations do not state a violation

2    of Section 2924g.  The plain text of the statute only requires Defendants to give notice of that

3    postponement on the date that the foreclosure sale was originally planned for.  Cal. Civ. Code §

4    2924g(d) (if the sale is postponed, "[t]he notice of each postponement and the reason therefor shall

5    be given by public declaration by the trustee *at the time and place last appointed for sale* . . . . *No*

6    *other notice of postponement need be given*.") (emphasis added).  Defendants were not obligated to

7    give any other notice of postponement.  The Complaint does not, and indeed cannot, allege that

8    Defendants failed to meet their obligations under Section 2924g(d) because Plaintiff filed this

9    lawsuit and acquired a temporary restraining order that forestalled the foreclosure sale before the

10   date it was planned to occur.[7]

11   Another problem with Plaintiff's claim is that it is not clear that a plaintiff can bring an

12   action to enforce Section 2924g(c) or 2924g(d) prior to an actual foreclosure sale.  Plaintiff cites

13   only two cases supposedly discussing claims under Section 2924g, but neither is on point.  One case,

14   *Badame*, actually does not involve a claim for violation of Section 2924g but rather one for violation

15   of Section 2923.5 that only makes passing reference to Section 2924g without exploring the

16   possibility of whether a plaintiff could bring a cause of action to enforce Section 2924g prior to a

17   foreclosure sale.  *Badame v. JP Morgan Chase Bank, N.A.*, No. CV 13-5425 PA-FFMX, 2014 WL

18   585451, at *9 (C.D. Cal. Feb. 13, 2014).  The other case also did not involve a plaintiff bringing a

19   cause of action under Section 2924g; instead, it was an action to set aside a foreclosure sale that had

20   already occurred.  *Melendrez v. D & I Inv., Inc.*, 127 Cal. App. 4th 1238, 1248 (2005).  The court

21   conducted its own research and could find no cases in which Section 2924g provided a cause of

22   action against a lender or beneficiary of a mortgage for failing to give notice of the agreed-upon

23   postponement of a foreclosure sale prior to the date of the foreclosure sale.

24   Accordingly, because no amendment can cure the fundamental defects in Plaintiff's Section

25   2924g claim, the claim is **dismissed without leave to amend.**

26   _____

27      [7]  Plaintiff urges the court to ignore the plain language of Section 2924g(d), and instead offers an argument based on convention: "[b]y convention, all lenders and servicers must inform the trustee of a loan that they intend to foreclose prior to the actual foreclosure sale."  Opp. at 15.  Because Plaintiff cites to no authority for this argument, the court will follow the text of Section 2924g(d).

28

United States District Court

For the Northern District of California

1

**C.  Negligence and Negligence Per Se**

2      In the September 15 Order, the court dismissed Plaintiff's negligence claim.  First, the court

3  noted the governing legal principles:

4      "[A]s a general rule, a financial institution owes no duty of care to a borrower when the
institution's involvement in the loan transaction does not exceed the scope of its
5  conventional role as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231
Cal. App. 3d 1089, 1096 (1991) (lender acting within the scope of its conventional activities
6  owed no duty of care to the borrower in preparing an appraisal of the security for the loan).
Liability to a borrower for negligence arises only under special circumstances, such as "when
7  the lender actively participates in the financed enterprise beyond the domain of the usual
money lender."  *Id.* (quotations omitted) . . . .  The test for determining whether a financial
8  institution owes a duty of care to a borrower-client "involves the balancing of various
factors, among which are [1] the extent to which the transaction was intended to affect the
9  plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff
suffered injury, [4] the closeness of the connection between the defendant's conduct and the
10  injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of
preventing future harm."  *Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49
11  Cal.2d 647 (1958)).[8]

12  Order at 21.

13      Then the court noted that "Plaintiff acknowledges that generally a financial institution owes

14  no duty of care to a borrower," but "alleged that special circumstances exist to find a duty of care,

15  i.e., that Defendants owed a duty of care because they 'actively participated in [Plaintiff's] loan

16  modification process for over two years and nine months, a process that was significantly delayed by

17  Defendants' negligent, unfair, and unlawful conduct' and 'assumed a duty of care when they took

18  affirmative action to restrict the non-foreclosure options available to [Plaintiff] by repeatedly

19  informing her that her best option was a loan modification through Defendants,' *see* FAC at ¶¶ 115-

20  117."  Order at 21.

21      The court then analyzed Plaintiff's contention that "Defendants' involvement in Plaintiff's

22  loan modification process constitutes the special circumstances necessary to create a duty of care on

23  the part of the financial institution."  Order at 21.  First the court noted that "the question of whether

24  a lender owes a duty of care to a borrower in the loan modification process is relatively unsettled."

25  Order at 22-27 (summarizing cases, including *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.

26

27  _____

28      [8]  The court refers to these six factors as the "*Nymark* factors," while Plaintiff refers to them as
the "*Biakanja* factors."

**United States District Court**
For the Northern District of California

1   App. 4th 49 (2013), *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 900 (2013), *Ottolini v.*

2   *Bank of Am.*, No. C-11-0477 EMC, 2011 WL 3652501 at *7 (N.D. Cal. Aug. 19, 2011), and others,

3   and discussing the conflict in case law). Then the court described the factual allegations and holding

4   in *Lueras*, which the court noted was "the most recently published case law from the California

5   Court of Appeal" on the subject:

6           In *Lueras*, the plaintiff homeowner requested a loan modification from the lender in 2009.
        This request resulted in two years of confusion, during which the plaintiff accepted one
7       forbearance agreement and paid reduced payments under its terms, then was told that his loan
        modification request had been accepted but also declined. *Id.* at 59. The plaintiff's efforts to
8       contact the lender to clarify whether he was actually eligible for loan modification were
        unsuccessful, and eventually the plaintiff's house was sold at a foreclosure sale. *Id.* at 59-60.
9       The plaintiff brought a negligence claim, alleging that the lender and trustee "had a duty to
        offer [the plaintiff] a loan modification and breached that duty by refusing to do so . . . [and
10      also] breached their duty of care by 'failing to timely and accurately respond to customer
        requests and inquiries,' by 'failing to comply with state consumer protection laws, properly
11      service the loan, and use consistent methods to determine modification approvals,' and by
        'failing to . . . record proper land records . . . and ensure chain of title prior to foreclosing and
12      to stop all foreclosure sales that are unlawful.'" *Id.* at 63.

13          . . . . After noting [the] conflicting lines of cases, the *Lueras* court concluded that "a loan
        modification is the renegotiation of loan terms, which falls squarely within the scope of a
14      lending institution's conventional role as a lender of money" because "[a] lender's
        obligations to offer, consider, or approve loan modifications and to explore foreclosure
15      alternatives are created solely by the loan documents, statutes, regulations, and relevant
        directives and announcements from the United States Department of the Treasury, Fannie
16      Mae, and other governmental or quasi-governmental agencies." *Lueras*, 221 Cal. App. 4th at
        67. The court then analyzed the *Nymark* factors to determine whether, in the circumstances
17      presented, the lender owed the borrower a duty of care, and concluded that it did not . . . .
        The court found that the lender and the trustee "did not have a common law duty of care to
18      offer, consider, or approve a loan modification, or to offer [the plaintiff] alternatives to
        foreclosure. Likewise, [they] did not have a duty of care to handle [the plaintiff's] loan in
19      such a way to prevent foreclosure and forfeiture of his property." *Id.* at 68 (quotations
        omitted).

20

21   Order at 22-25. The court concluded that "although there appears to be some disagreement about

22   whether a lender owes a borrower a duty of care during the loan modification process, the court will

23   follow the California Court of Appeal's published opinion in *Lueras*, as it comports with this court's

24   analysis of the *Nymark* factors in the present circumstances." Order at 26.

25          The court then analyzed the six *Nymark* factors as follows:

26          First, the extent to which the transaction was intended to affect Plaintiff is limited. *See*
        *Ottolini v. Bank of Am.*, No. C-11-0477 EMC, 2011 WL 3652501 at *7 (N.D. Cal. Aug. 19,
27      2011) (finding that the first *Nymark* factor was "somewhat remote under the circumstances
        of the case" because "[e]ven if Defendants allegedly mishandled Plaintiff's request for loan
28      modification, the loan modification application was never acted on. This stands in contrast

to the facts in [*Ansanelli*], where the lender agreed to place the borrower on a loan modification plan."). With respect to the second and third *Nymark* factors, the harm to Plaintiff was not particularly foreseeable and has not occurred with certainty since there is no indication that loan modification actually would have been approved. *Id.* ("Absent a likelihood of approval, [the plaintiff] suffered no ultimate injury from the mishandling of his application."). The fourth *Nymark* factors considers the closeness of the connection between the defendant's conduct and the injury suffered. As in *Lueras*, this factor counsels against a finding of duty because Plaintiff's injury was the result of her default on the loan, not Defendants' conduct during the loan modification process. *Lueras*, 221 Cal. App. 4th at 67 ("If the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct."). Furthermore, "the closeness of the connection between Defendants' conduct and the injury suffered is similarly remote absent a likelihood that the modification would have been approved." *Ottolini*, 2011 WL 3652501 at *7. As for the fifth factor, moral blame cannot be attached to Defendants' conduct where Plaintiff's default created her need for a modification. *Lueras*, 221 Cal. App. 4th at 67 ("If the lender did not place the borrower in a position creating a need for a loan modification, then no moral blame would be attached to the lender's conduct.").

Finally, the policy of preventing future harm cuts both ways, as summarized aptly by the court in *Ottolini*:

> Imposing negligence liability may give lenders an incentive to handle loan modification applications in a timely and responsible manner. On the other hand, absent a duty in the first place to modify a loan or even to evaluate such an application under objective standards limiting the lender's discretion, imposing negligence liability for the mishandling of loan modification applications could be a disincentive to lenders from ever offering modification.

*Ottolini*, 2011 WL 3652501 at *7.

Order at 26-27.

Finally, the court found that the balance of *Nymark* factors did not support the conclusion that there were special circumstances did not exist to create a duty of care:

> Here, where Plaintiff required a loan modification because she had defaulted on her loan, the loan modification had not progressed to a concrete stage, and there was no indication of the likelihood that her loan modification would have been granted, the court finds that the balance of *Nymark* factors weighs against finding that special circumstances exist to create a duty owed by Defendants to Plaintiff with respect to her attempt to obtain a loan modification. Plaintiff's second theory of negligence is **dismissed with leave to amend.** Plaintiff may amend this theory only insofar as she can plead additional allegations that establish that Defendants owed her a duty of care.

Order at 27 (emphasis in original).

Just like the FAC, the SAC alleges that Plaintiff sought a loan modification because she had defaulted on her mortgage, and fails to allege any indication that Plaintiff's loan modification application actually had been or would have been approved. The SAC adds no new factual

14

**United States District Court**
For the Northern District of California

1  allegations with respect to any special circumstances that could create a duty of care.  Instead, the

2  new text in the SAC amounts to legal argument.  The SAC takes essentially the same factual

3  allegations Plaintiff made in her FAC and argues that the balance of *Nymark* factors should lead to

4  the conclusion that special circumstances exist to create a duty of care.  *See, e.g.*, SAC at ¶¶  89-90

5  (first set[9]) (arguing that the first *Biakanja* factor requires consideration of fact that Plaintiff informed

6  Defendants on numerous occasions that she had defaulted and needed loan modification, and that

7  she was ready and willing to tender payment of her arrears and/or file Chapter 13 bankruptcy

8  protection); ¶ 88 (second set) (arguing that the second *Biakanja* factor must consider that Plaintiff's

9  harm was foreseeable because Defendants had expertise in the financial industry and had control

10  over Plaintiff's loan modification); ¶ 89 (second set) (arguing that considerations for the third

11  *Biakanja* factor include Plaintiff's alleged injuries of being subjected to a potential foreclosure sale,

12  being subjected to a potential unlawful detainer action if she is subjected to a foreclosure sale,

13  attorneys' and other fees, foregoing non-foreclosure options).  The SAC contains no new allegations

14  going to whether Defendants acted outside a financial institution's "conventional role as a lender of

15  money."

16      Because Plaintiff has already had an opportunity to amend her negligence claim but her

17  allegations remain insufficient, further amendment would be futile.  The negligence claim is

18  **dismissed without leave to amend.**

19                    **IV.  CONCLUSION**

20      For the foregoing reasons, the motion is **granted.**

21

22      IT IS SO ORDERED.

23  Dated:  January 15, 2015

24                                    _____
                                      DONNA M. RYU
25                                    United States Magistrate Judge

26

27  ————————————————

28      [9]  There is a mistake in the paragraph numbering in the SAC; there are two sets of paragraphs
    labeled ¶¶ 88-90.